ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NSB VEGA BAJA, LLC.<br><br>Apelante<br><br>v.<br><br>RENÉ RONDA RIVERA Y OTROS<br><br>Apelados | KLAN202500466<br><br><br><br>Consolidado con | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Caso Número: BY2023CV04670<br><br>Sobre: Interdicto Preliminar y Permanente; Daños; Abuso del Derecho |
| NSB VEGA BAJA, LLC.<br><br>Peticionaria<br><br>v.<br><br>RENÉ RONDA RIVERA Y OTROS<br><br>Recurridos | KLCE202500558 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Caso Número: BY2023CV04670<br><br>Sobre: Interdicto Preliminar y Permanente; Daños; Abuso del Derecho |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Martínez Cordero y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de agosto de 2025.

Comparece NSB Vega Baja, LLC ("NSB") mediante recursos de *Apelación* y *Certiorari*, respectivamente. Mediante su recurso de *Apelación*, clasificado alfanuméricamente como **KLAN202500466**, NSB nos solicita que revoquemos la *Sentencia Parcial* emitida el 18 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("TPI"). Mediante el referido dictamen, el TPI desestimó la demanda presentada en contra de René Ronda Rivera ("señor Ronda Rivera"), en su carácter personal.

Por otra parte, a través del auto de *Certiorari*, clasificado alfanuméricamente como **KLCE202500558**, NSB peticiona que revisemos la *Resolución* dictada el mismo día por el foro de instancia. En virtud de

tal determinación, el TPI denegó la solicitud de descalificación instada por NSB en contra del representante legal del señor Ronda Rivera, por incurrir en una presunta representación simultánea adversa.

Por los fundamentos que proceden, se *Confirma* la *Sentencia Parcial* apelada a través del recurso **KLAN202500466**. En cambio, se *deniega* la expedición del auto de *certiorari* solicitado mediante el recurso **KLCE202500558**.

**I.**

El caso de autos tuvo su génesis procesal el 23 de agosto de 2023, cuando NSB instó una *Petición* sobre interdicto preliminar y permanente, daños y abuso del derecho en contra del señor Ronda Rivera, por sí y en representación de la Asociación de Propietarios de Vega Serena, Inc. ("APVS"). NSB señaló que es dueña del predio que se describe a continuación:

> "RUSTICA: Finca radicada en los barrios Pueblo y Pugnado Afuera, del término municipal de Vega Baja, Puerto Rico, con una cabida superficial de un millón trescientos veinte siete mil noventa y ocho punto cero ocho tres (1,327,098.083) metros cuadrados, equivalente a trescientos treinta y siete punto seis cinco cuatro cinco (337.6545) cuerdas; en lindes por el NORTE, con terrenos del Señor José Antonio Aulet Méndez y Carmen Alicia Maldonado; por el SUR, con terrenos de Miguel Inocencio Sánchez, José Márquez, Celedonio Montalvo y Ernesto Otero; por el ESTE, con terrenos de la Sucesión Pantojas, Francisco Negrón y Alberto Pantoja y por el OESTE, con terrenos del Señor Ricardo Díaz Colón, Graciela Crespo, Leonardo Rivera Sánchez, Félix Méndez Vega, con calle municipal Juan Guzmán, Sucesión Pedro· Sánchez, Jorge Pérez, Juan Ortiz Matos, la Sucesión Luciana Rodríguez, Liboria Rodríguez, Rafael Rey, José Márquez, Leonardo Valentín, Sucesión José Rosario, Sucesión Vita Rosario, Sucesión Reimundo Cancel, Quintín Carrillo, Hipólito Maysonet, Luis Martínez y del Doctor Pérez Martínez.---------------------------------------------------------------
>
> La finca se encuentra inscrita al tomo Karibe de Vega Baja, finca número 33859 del Registro de la Propiedad de Bayamón, Sección IV.----------------------------------------------------------------------------
>
> La propiedad tiene los siguientes números de catastro: 057-037-244-09- 000, 057-000-009-84-000 y 057-000-008-23-001----------[1]

Adujo que en la propiedad antes descrita se lleva a cabo el desarrollo del proyecto residencial, La Sabana, para el cual cuenta con los permisos y endosos correspondientes. Especificó que, para ejecutar la entrega de las

---

[1] Apéndice del KLAN202500466, pág. 48.

unidades de vivienda ya construidas, requiere realizar la conexión sanitaria autorizada por la Autoridad de Acueductos y Alcantarillados ("AAA").

Detalló que los dueños de las propiedades colindantes, NSB y VSVB Development, LLC, constituyeron servidumbres recíprocas para las líneas de tubería sanitaria, las cuales fueron aprobadas por la AAA, mediante Escritura Pública. En otras palabras, puntualizó que tenía autorización para llevar a cabo la conexión sanitaria de La Sabana con las líneas de tubería de la urbanización colindante, Vega Serena.

No obstante, alegó que miembros de la APVS, su administración y su presidente, el señor Ronda Rivera, habían impedido que las obras de conexión sanitaria pudieran efectuarse. Particularmente, relató una serie de incidencias en las que el señor Ronda Rivera interfirió con la ejecución de las obras.

Como resultado, solicitó ante el foro primario que se le impusiera a la APVS el pago de $85,000.00, por concepto de daños. Asimismo, peticionó que se le ordenara al señor Ronda Rivera a indemnizarlos por una cantidad no menor de $50,000.00, por concepto de los daños y perjuicios ocasionados por este. De igual manera, suplicó que se expidiera un interdicto permanente, de conformidad con la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.

Tras varias instancias procesales, el 21 de septiembre de 2023, el foro de instancia emitió una *Resolución*. En virtud de la misma, concedió el *injunction* preliminar solicitado y les ordenó a los codemandados a cesar y desistir de interferir con las obras de construcción.

Posteriormente, el 29 de enero de 2025, el señor Ronda Rivera presentó una *Moción de Desestimación Parcial* en virtud de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5). En síntesis, expuso que toda acción y comunicación fue realizada en calidad de presidente de la APVS y no en su carácter personal, según arguye NSB. Añadió que siempre actuó dentro del marco legal de sus funciones y conforme a los

intereses de la APVS. Particularizó, además, que, para lograr imponerle responsabilidad personal, se debía descorrer el velo corporativo de la APVS. Ante la falta de intención de NSB para descorrer el velo corporativo de la asociación, sostuvo que procedía la desestimación de la reclamación incoada en su contra.

Por otra parte, el 30 de enero de 2025, NSB notificó una *Moción para que se Ordene Aclarar Comparecencia y Representación Legal*. Adujo que surgía de la solicitud de desestimación una Declaración Jurada del señor Ronda Rivera, en la cual expuso que sus labores como presidente de la APVS habían culminado en diciembre de 2024. Siendo así, arguyó que el señor Ronda Rivera debía aclarar si aún podía comparecer en representación de la asociación. Cónsono con lo anterior, arguyó que el Lcdo. Jesús Manuel Morales Irizarry debía acreditar si contaba con consentimiento para representar simultáneamente a la APVS y al señor Ronda Rivera, en su carácter personal.

El 5 de febrero de 2025, el señor Ronda Rivera instó su *Réplica a Moción para que se Ordene Aclarar...*, en la cual expresó que comparecía por sí y en representación de la APVS. Para evidenciar dicha facultad, adjuntó la resolución corporativa que lo autorizaba a acudir en representación de la asociación. Añadió que su abogado, desde su comparecencia inicial ante el foro de instancia, asumió la representación legal de ambas partes.

De manera consecutiva, el 13 de febrero de 2025, NSB presentó una *Moción para que se Declare en Incumplimiento a la Parte Demandada y Sobre Otros Extremos*. Arguyó que el Lcdo. Morales Irizarry no acreditó estar autorizado para representar simultáneamente a la APVS y al señor Ronda Rivera. Expuso, además, que el señor Ronda Rivera no especificó si podía continuar compareciendo en representación de la APVS, a pesar de haber cesado labores como presidente.

El 21 de febrero de 2025, NSB radicó una *Moción de Descalificación* en contra del Lcdo. Morales Irizarry, por incurrir en una alegada

representación simultánea adversa. Adujo que el letrado no podía brindar una defensa efectiva a favor de la APVS cuando, al defender al señor Ronda Rivera en su carácter personal, le imputaba a la asociación responsabilidad por las acciones de este.

En respuesta, el 25 de febrero de 2025, el señor Ronda Rivera, por sí y en representación de la APVS, notificó una *Moción en Cumplimiento de Orden y Solicitando se dé por sometida Moción en Oposición*. Alegó que la solicitud de descalificación era improcedente, ya que existían otras controversias, como la moción de desestimación, que debían ser resueltas primero.

El 4 de marzo de 2025, NSB notificó su *Oposición a "Moción de Desestimación Parcial"*. En lo aquí pertinente, sostuvo que las alegaciones de la demanda inciden específicamente contra las actuaciones personalísimas del señor Ronda Rivera, más allá de sus acciones como presidente de la APVS. Expuso, además, que las acciones del señor Ronda Rivera, al interferir con el proyecto, no fueron en representación de la asociación.

Finalmente, el 5 de marzo de 2025, NSB presentó una *Moción Suplementaria a "Moción de Descalificación"*. En esta, reiteró los argumentos previamente esbozados a favor de la descalificación del Lcdo. Morales Irizarry.

Aquilatada la solicitud de desestimación y su correspondiente oposición, el 18 de marzo de 2025, el foro de instancia dictaminó una *Sentencia Parcial*. En virtud del aludido dictamen, desestimó la demanda incoada en contra del señor Ronda Rivera, en su carácter personal. El TPI determinó que, aun tomando como ciertas todas las alegaciones de la demanda, las acciones del señor Ronda Rivera no se desviaron de sus obligaciones como presidente de la APVS. De tal modo que, las alegaciones no eran suficientes para mantener la reclamación personal en su contra. Además, detalló que tampoco surgía motivo alguno para descorrer el velo corporativo de la asociación.

Ese mismo día, el TPI emitió una *Resolución*. Mediante tal dictamen, denegó la solicitud de descalificación peticionada por NSB. El foro de instancia determinó que, tras la desestimación de la acción personal en contra del señor Ronda Rivera, la solicitud de descalificación se había tornado académica.

Insatisfecho con ambos dictámenes, el 2 de abril de 2025, NSB instó una *Moción de Reconsideración*. Por su parte, el 23 de abril de 2025, la APVS notificó su *Moción en Cumplimiento de Orden y en Oposición a Moción de Reconsideración de NSB*. Examinadas ambas mociones, el TPI denegó la solicitud de reconsideración mediante *Resolución* dictada el 25 de abril de 2025.

Inconforme aún con la *Sentencia Parcial*, el 23 de mayo de 2025, NSB acudió ante nos mediante *Apelación*, clasificada alfanuméricamente como **KLAN202500466**, y realizó el siguiente señalamiento de error:

> **Erró y abusó de su discreción el TPI al declarar Ha Lugar la moción de desestimación bajo la Regla 10.2 de las de Procedimiento Civil desestimando la Demanda incoada en contra del codemandado René Ronda Rivera. Esto, a pesar de las alegaciones específicas presentadas en su contra en carácter personal y de las determinaciones de hecho en contra del codemandado en su Resolución de Interdicto Preliminar.**

En igual fecha, recurrió de la *Resolución* dictada el 18 de marzo de 2025, mediante recurso de *Certiorari*, clasificado alfanuméricamente como **KLCE202500558**. NSB realizó el siguiente señalamiento de error:

> **Erró y abusó de su discreción el TPI al denegar la descalificación del Lcdo. Jesús Manuel Morales Irizarry quien ha incurrido en representación simultánea adversa en favor del recurrido René Ronda Rivera y en detrimento de la APVS. Esto, afectando los procedimientos del caso y en clara violación a las disposiciones del Canon 21 de Ética Profesional y su jurisprudencia interpretativa.**

El 2 de junio de 2025, por su intrínseca relación, consolidamos ambos recursos mediante *Resolución*. A su vez, le concedimos a la APVS un término de treinta (30) días para presentar su oposición a los recursos de apelación y *certiorari*.

Consecuentemente, el 2 de junio de 2025, la APVS presentó una *Moción de Desestimación y Solicitando Imposición de Sanciones*. Adujo que procedía la desestimación del auto de *certiorari*, debido a que la controversia impugnada, a saber, la descalificación del Lcdo. Morales Irizarry, no es justiciable. En respuesta, 16 de junio de 2025, NSB instó una *Oposición a "Moción de Desestimación y Solicitando Imposición de Sanciones"*. Examinadas ambas mociones, denegamos la solicitud de desestimación instada por la APVS mediante *Resolución* dictada el 24 de junio de 2025. Siendo así, le ordenamos cumplir con el término dispuesto para presentar su oposición a los recursos.

El 23 de junio de 2025, la APVS notificó un alegato en oposición al recurso de Apelación. Transcurrido el término dispuesto para presentar su oposición al recurso de *Certiorari*, el 30 de julio de 2025, la APVS presentó su *Alegato de Parte Recurrida*. Perfeccionado el recurso, nos encontramos en posición de resolver.

**II.**

**-A-**

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company,* 2024 TSPR 99, 214 DPR ___ (2024); *León Torres v. Rivera Lebrón,* 204 DPR 20, 40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba". *Rivera Candela v. Universal Insurance Company, supra* (citando a J.A. Echevarría Vargas,

*Procedimiento civil puertorriqueño*, 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92). Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres Serrano*, 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos*, *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569-570 (2001).

No obstante, cuando la reclamación judicial instada carezca de alegaciones específicas o suficientes, la parte adversa tiene el derecho de solicitar la desestimación a tenor con la Regla 10.2(5) de Procedimiento Civil, *supra*, 32 LPRA Ap. V, R. 10.2(5). Véase, también, *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023). En específico, el precitado inciso reglamentario dispone que procede la desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2 (5). Ahora bien, como norma general, no procede la desestimación salvo se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012).

En estos casos, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado*, *supra*, pág. 85. Particularmente le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida". *Íd*. Ello evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 534 (2024), citando a *Rosario v. Nationwide Mut.*, 158 DPR 775, 780 (2003).

Conviene señalar que, el Tribunal Supremo de Puerto Rico en *Acquisitions, LLC v. Municipio de Yabucoa,* 210 DPR 384, 397 (2022),

discute el examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

[A]l interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *Comisión v. González et al.*, 211 DPR 579, 615 (2023). Si luego comprende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros*, *supra*, pág. 534, citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. En cambio, si concluye que las alegaciones cumplen con el estándar de suficiencia le corresponde denegar la petición de desestimación.

**-B-**

La Ley Núm. 164-2009, según enmendada, conocida como la *Ley General de Corporaciones*, 14 LPRA secs. 3501 *et seq.*, rige los asuntos concernientes a la existencia y vida jurídica de las corporaciones privadas. *Eagle Security Police, Inc. v. Efrón Dorado, S.E.*, 211 DPR 70, 85 (2023); *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, 203 DPR 31, 45 (2019). En nuestro ordenamiento jurídico las corporaciones tienen una personalidad jurídica distinta y separada de sus inversionistas. *Eagle Security Police, Inc. v. Efrón Dorado, S.E.*, *supra*, pág. 86, citando a C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2da ed. rev., Editorial AlmaForte, Ed., 2018, pág. 120. Como resultado, de ordinario,

los accionistas, directores y oficiales no responden personalmente por las obligaciones de la corporación.

No obstante, quedan sujetos a responder por las obligaciones de su corporación cuando se intenta cometer fraude o una injusticia, evadir alguna obligación estatutaria o derrotar la política pública. *Srio D.A.C.o. v. Comunidad San José, Inc.*, 130 DPR 782, 798 (1992). Cuando ello ocurre, aplica la doctrina de descorrer el velo corporativo, la cual conlleva la suspensión de la responsabilidad limitada que cobija a los accionistas, oficiales y directores. Díaz Olivo, *op. cit.*, pág. 117.

La referida doctrina también es aplicable cuando una corporación es un *alter ego* o conducto económico pasivo de sus accionistas y cuando entre éstos y la corporación existe tal identidad de interés que las personalidades de la corporación y de los accionistas se hallan confundidas, de manera que la corporación en realidad no es una persona jurídica independiente y separada. *D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro*, 132 DPR 905, 925 (1993).

Los principios rectores de la doctrina de descorrer el velo son los siguientes:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso;
2. El ignorar la entidad corporativa constituye la excepción a la regla;
3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;
4. El fracaso de la corporación en su gestión económica, su administración deficiente y la falla en observar las formalidades corporativas no son por sí mismos, razón suficiente para desconocer la entidad;
5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;
6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;
7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas;
8. La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta;
9. Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:

(i)     existe tal identidad de interés y propiedad que la corporación y la persona de sus accionistas se hallen confundidas; y

(ii)    que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por equivaler a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad.

Díaz Olivo, *op. cit.*, págs. 140-141.

La parte que propone rasgar el velo corporativo deberá argüir, además, que reconocer la personalidad jurídica independiente equivaldría a sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, o defender el crimen. *D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro, supra*, pág. 927; *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825, 832 (2007). Por último, quien solicita descorrer el velo corporativo, tendrá que sostener que existe una relación causal entre la utilización de la corporación como un instrumento o *alter ego* y el fraude o acto ilegal perpetuado. Díaz Olivo, *op. cit.*, págs. 140-41; *D.A.C.o. v. Alturas Fl. Dev. Corp. y otro, supra*, pág. 927.

La aplicación de la doctrina de descorrer el velo corporativo dependerá de los hechos y las circunstancias específicas de la prueba presentada. El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas, y corresponde al foro sentenciador, en última instancia, determinar si procede el levantamiento del velo corporativo. *D.A.C.o. v. Alturas Fl. Dev. Corp. y otro, supra*, pág. 926. Para que se justifique rasgar el velo corporativo, la prueba deberá ser fuerte y robusta. *Srio. D.A.C.o. v. Comunidad San José, Inc., supra*, pág. 798.

La parte que propone rasgar el velo corporativo deberá argüir, además, que reconocer la personalidad jurídica independiente equivaldría a sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, o defender el crimen. *D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro, supra*, pág. 927; *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825, 832 (2007). Por último, quien

solicita descorrer el velo corporativo, tendrá que sostener que existe una relación causal entre la utilización de la corporación como un instrumento o *alter ego* y el fraude o acto ilegal perpetuado. Díaz Olivo, *op. cit.*, págs. 140-41; *DACo v. Alturas Fl. Dev. Corp. y Otro, supra*, pág. 927.

**-C-**

El Tribunal de Primera Instancia tiene autoridad para ordenar la descalificación de un abogado. *K–Mart Corp. v. Walgreens*, 121 DPR 633, 638 (1988). Procede la descalificación cuando el abogado "incurr[e] en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as)". Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.3.

"Una orden de descalificación puede proceder, ya sea para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito." *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 661-662 (2000).

Cuando es una parte quien solicita la descalificación de un abogado, el TPI debe "hacer un análisis de la totalidad de las circunstancias", considerando los siguientes factores: "(i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos." *Job Connection Center v. Sups. Econo*, 185 DPR 585, 597-598 (2012); *Liquilux Gas Corp v. Berríos, Zaragoza*, 138 DPR 850, 864 (1995).

Aunque no constituye un procedimiento disciplinario, una descalificación afecta los derechos de las partes y el trámite del procedimiento. En consideración a ello, la descalificación es un remedio que no se debe imponer ligeramente. Solo procede cuando sea estrictamente necesario. Si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes, la descalificación debe ser denegada. El Tribunal debe realizar un balance entre el efecto adverso de la representación y el derecho a un juicio justo e imparcial. *Job Connection Center v. Sups. Econo, supra*, págs. 599-602.

La determinación de derecho del TPI, de descalificar a un abogado es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000). En tal sentido, se revoca esta determinación si se demuestra que hubo un craso abuso de discreción, que el TPI actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o que la intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**-D-**

El Canon 21 del Código de Ética Profesional, dispone, en lo pertinente, lo siguiente:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar

adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

4 LPRA Ap. IX; *In re Rafucci Caro*, 206 DPR 589, 608 (2021)

Al amparo del referido canon, es norma reiterada, que los miembros de la profesión legal deben evitar los siguientes escenarios que reflejan conflicto de intereses: (a) aceptar la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior, situación conocida como representación sucesiva adversa; (b) aceptar la representación simultánea de dos (2) clientes con intereses encontrados, situación conocida como representación simultánea de clientes, y (c) aceptar la representación legal conociendo que su juicio profesional puede verse afectado por sus intereses personales. *In re Rafucci Caro, supra*, pág. 609. En lo que respecta a la instancia de representación simultánea adversa, por medio de su proscripción se pretende evitar que un abogado en beneficio de un cliente "abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que, abogaría así por causas contrarias." *In re Pietri Torres*, 201 DPR 583, 595 (2018).

La referida prohibición "se extiende no solo a la existencia real del conflicto, sino a conflictos aparentes pero que llevan consigo la semilla de un posible o potencial conflicto." *In re Aponte Duchesne*, 191 DPR 247, 257 (2014). Huelga resaltar, que independientemente que un cliente consienta o no a una representación simultánea antagónica, un abogado, no puede asumir ese tipo de representaciones, debido a que, de la misma surge una relación sustancial que implica intereses adversos. *Otaño v. Vélez*, 141 DPR 820, 826 (1996). Cónsono con ello, para que un abogado renuncie a la representación simultánea adversa, el cliente no tiene que probar que

existió una violación al factor de confidencialidad, ya que para que proceda tal renuncia solo es suficiente que pruebe: (a) la existencia de una relación previa de abogado y cliente; (b) la relación sustancial vigente entre ambas representaciones conflictivas; y (c) el efecto adverso que surge de la representación dual de ellas. *Íd.*, pág. 827.

Ahora bien, es importante destacar *"*que nada existe en el referido Canon 21 que vede la representación sucesiva o simultánea de dos clientes por su abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones." *Íd.*

**-E-**

El principio de la justiciabilidad recoge una serie de doctrinas de autolimitación basadas en consideraciones prudenciales que prohíben emitir decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia. *Moreno Orama v. UPR*, 178 DPR 969, 973 (2010); *Com. de la Mujer v. Srio. de Justicia*, 108 DPR 715, 720 (1980); *ELA v. Aguayo*, 89 DPR 552, 595 (1958). A tales efectos, el poder de revisión judicial únicamente puede ejercerse en un asunto que presente un caso o controversia, y no en aquellas circunstancias en que se presente una disputa abstracta, cuya solución no tendrá consecuencias para las partes. *ELA v. Aguayo, supra*, págs. 558-59.

En ese contexto, un asunto no es justiciable cuando (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva o, (v) cuando se pretende promover un pleito que no está maduro. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Crespo v. Cintrón*, 159 DPR 290, 298 (2003); *ELA v. Aguayo, supra*, pág. 584.

Como se observa, una instancia en la que un caso no es justiciable se suscita cuando la controversia se torna académica. *Íd.* En esencia, se

sostiene que un caso es académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada, que en realidad no existe, (2) una determinación de un derecho, antes de que haya sido reclamado y (3) una sentencia sobre un asunto que al dictarse no podrá tener efectos prácticos sobre una controversia existente. *Íd., San Gerónimo Caribe Project v. ARPe*, 174 DPR 640, 652 (2008). Es decir, que una controversia puede convertirse en académica cuando "su condición viva cesa por el transcurso del tiempo. *UPR v. Laborde Torres,* 180 DPR 253, 280 (2010).

No obstante, nuestro más Alto Foro ha reconocido excepciones a la doctrina de academicidad, a saber: (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia; (3) cuando subsisten consecuencias colaterales que tienen vigencia y actualidad. *Íd.*, pág. 281.

Conforme a lo anterior, cuando un Tribunal atiende un planteamiento de academicidad, nuestro ordenamiento le impone la obligación de desestimar el recurso si de los hechos o del derecho aplicable surge que las circunstancias han variado de tal forma, que no existe una controversia vigente entre partes adversas que amerite su intervención. *Moreno Orama v. UPR, supra,* pág. 973.

**III.**

A través del recurso **KLAN202500466**, NSB arguye que el foro de instancia incidió al desestimar la acción incoada en contra del señor Ronda Rivera, antiguo presidente de la APVS, en su carácter personal. De manera particular, señala que la *Demanda* contiene alegaciones específicas sobre las acciones ejecutadas por el señor Ronda Rivera, tanto en su carácter personal, como en calidad de presidente de la asociación. Además, sostiene que, a través de la *Resolución* de *injunction* preliminar, el TPI realizó determinaciones de hechos sobre las actuaciones del señor Ronda Rivera en su carácter personal.

En oposición, la APVS puntualiza que la asociación es una corporación debidamente inscrita. Como corolario, expresa que las reclamaciones contra los actos de una corporación deben ir dirigidas, en primera instancia, contra el ente corporativo en sí y no contra sus miembros. Ante ello, expuso que las actuaciones del señor Ronda Rivera fueron ejercidas como presidente y en representación de la asociación. Añade que el señor Ronda Rivera, como presidente, tenía el deber de actuar a favor de los derechos de la APVS, lo cual incluía defender a la asociación de las acciones de NSB. Siendo así, arguyó que NSB únicamente podía ir en contra de las acciones de su antiguo presidente si descorría el velo corporativo de la asociación.

Por otro lado, la APVS aduce que, mediante las determinaciones de hechos contenidas en la *Resolución* de *injunction* preliminar, el foro de instancia ni tan siquiera mencionó al señor Ronda Rivera. A su vez, señala que del referido dictamen solo se desprende que NSB tenía un permiso de construcción y que la asociación había impedido la ejecución del mismo.

Surge de la *Sentencia Parcial* apelada que, tras tomar como ciertas todos los hechos bien alegados en la Demanda, el TPI determinó que los mismos no eran suficientes para mantener la reclamación personal instada en contra del señor Ronda Rivera. Examinado el expediente, conforme al derecho aplicable, no encontramos razón para distanciarnos de lo resuelto por el foro de instancia.

No existe controversia respecto a que la APVS es una corporación debidamente registrada. Conforme al derecho aplicable, como norma general, los oficiales de una corporación no responden personalmente por los actos ejecutados en representación de esta. Sin embargo, los miembros o accionistas de la corporación podrán responder personalmente si el demandante descorre el velo corporativo.

Al auscultar cuidadosamente las alegaciones en contra del señor Ronda Rivera, concluimos que, en síntesis, las mismas, establecen que este impidió que se llevara a cabo la conexión sanitaria. Concordamos con

el foro de instancia al concluir que los actos alegados en la Demanda fueron realizados en calidad de presidente de la APVS. Las propias alegaciones de NSB nos mueven a razonar que el señor Ronda Rivera operó como presidente de la APVS para beneficio de la propia asociación, quien se oponía a la ejecución de las obras. El mero hecho de alegar que el señor Ronda Rivera, personalmente, impidió las obras de conexión no es suficiente para descorrer el velo corporativo de la APVS e imponerle responsabilidad personal por sus actos.

Cabe destacar que NSB nunca ha intentado descorrer el velo corporativo de la APVS. Siendo así, no debería estar en controversia el hecho de que el señor Ronda Rivera no puede responder personalmente por las acciones llevadas a cabo en representación de la APVS durante su término como presidente. Así dispuesto, resulta forzoso concluir que el foro de instancia no erró al desestimar la reclamación personal presentada en contra del señor Ronda Rivera.

Por otra parte, NSB señala que el foro de instancia actuó en contra de sus propios actos al desestimar la acción. Alega que a través de la *Resolución* de interdicto preliminar el TPI realizó una serie de determinaciones de hechos sobre la responsabilidad personal del señor Ronda Rivera.

Tal argumento no amerita una discusión mayor por parte de este foro apelativo intermedio. Hemos examinado el referido dictamen y no encontramos determinación de hecho alguna que haga referencia, de manera particular, al señor Ronda Rivera en su carácter personal. Es por ello que, tal aseveración resulta incorrecta e induce a error.

Mediante el recurso **KLCE202500558**, NSB nos solicita que revisemos la *Resolución* mediante la cual el foro de instancia denegó la descalificación del representante legal de la APVS y el señor Ronda Rivera.

Surge del expediente que NSB alega que el Lcdo. Morales Irizarry incurre en una representación simultánea adversa al representar, concurrentemente, al señor Ronda Rivera y a la APVS. Sin embargo, luego

de desestimar la acción instada en contra del señor Ronda Rivera, en su carácter personal, el foro de instancia determinó que, la solicitud de desestimación se había tornado académica.

Es preciso concluir que, una vez desestimada la reclamación en contra del señor Ronda Rivera, la presunta representación simultánea culminó, ya que, luego de ello, el Lcdo. Morales Irizarry únicamente se encuentra representando a la APVS.

Así las cosas, luego de examinar el expediente, a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra,* no identificamos razón por la cual esta Curia deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando de la actuación del foro surja un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.

### IV.

Por los fundamentos que anteceden, se *Confirma* la *Sentencia Parcial* apelada a través del recurso **KLAN202500466**. En cambio, se *deniega* la expedición del auto de *certiorari* solicitado mediante el recurso **KLCE202500558**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones